UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANGELO MITCHELL,

    Petitioner,

    v.

ROBERT W. FOX,

    Respondent.

Case No. 16-cv-03885-EMC

**ORDER OF DISMISSAL**

Docket No. 6

## I. INTRODUCTION

Angelo Mitchell filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the habeas petition as untimely, and Mr. Mitchell has opposed the motion. The critical issue is whether his appellate attorney's disciplinary problems provide any excuse for Mr. Mitchell's extreme delay in filing his federal petition for writ of habeas corpus. Concluding that they do not, the Court dismisses the action because the statute of limitations deadline expired almost nine years before Mr. Mitchell filed his federal habeas petition.

## II. BACKGROUND

A.    Chronology Of Mr. Mitchell's Challenges To Conviction

Following a jury trial in San Francisco County Superior Court, Mr. Mitchell was convicted of sexual battery, making a terrorist threat, and three counts of forcible oral copulation. On November 9, 2004, Mr. Mitchell was sentenced to a total of 27 years to life in prison. Docket No. 1 at 1.

He appealed. On appeal, Mr. Mitchell was represented by his retained attorney, LeRue Grim. On January 24, 2006, the California Court of Appeal affirmed the judgment of conviction

1  but remanded for resentencing to change the concurrent life sentences to stayed sentences.  Mr.
2  Mitchell (acting through attorney Grim) filed a "petition for review" in the California Court of
3  Appeal on February 8, 2006; the petition was denied on February 17, 2006.  Docket No. 8-1 at 88.
4  No petition for review was filed in the California Supreme Court.

5  At the same time he filed his opening brief on direct appeal, Mr. Mitchell (acting through
6  attorney Grim) filed a petition for writ of habeas corpus in the California Court of Appeal.  Docket
7  No. 8-1 at 51.  On January 24, 2006, the day the conviction was affirmed, the California Court of
8  Appeal issued an order to show cause on the habeas petition.  Docket No. 8-1 at 84.  The order to
9  show cause also directed that the matter be heard in the trial court and that counsel be appointed to
10 represent Mr. Mitchell.  *Id.*  Attorney John D. Hickman thereafter represented Mr. Mitchell in the
11 2006 state habeas proceedings.  Docket No. 8-2 at 40.  In the state habeas petition, Mr. Mitchell
12 asserted that trial counsel was ineffective in failing to allow Mr. Mitchell to testify at trial.  Mr.
13 Mitchell contended that he wanted to testify to explain his presence at the scene of the crime and
14 explain why the victim might have misidentified him as the perpetrator.  After a four-day
15 evidentiary hearing, the superior court denied the habeas petition on September 18, 2006.  The
16 superior court explained that it was "sound trial strategy to not have defendant testify" when his
17 proposed testimony was "incredible" and "contradicted by witnesses."  Docket No. 8-3 at 40.[1]

18 About nine years later, Mr. Mitchell restarted his efforts to challenge his conviction.  In
19 September 2015, he filed a habeas petition in the San Francisco County Superior Court asserting

---

[1] The victim testified that she had seen a man on the street, who then grabbed her from behind, forced her into a dark carport, forced her to perform oral sex on him, and then fled from the carport.  The victim "saw two police officers across the street and said, 'That's him, get him.'  At trial, [the victim] said she was '120 percent' sure that her attacker was defendant." *People v. Mitchell*, No. A108459, 2006 WL 164997, *1 (Cal. Ct. App. Jan. 24, 2006).  Upon hearing the victim's call for help, a police officer called to Mr. Mitchell, who ran away; the officer gave chase and apprehended Mr. Mitchell several blocks away.  *Id.*  At trial, the officer identified Mr. Mitchell as the man he chased and apprehended.  *Id.*

Mr. Mitchell filed a declaration in support of his habeas petition in 2006, stating that he wanted to testify so he could explain why he was present at the scene but not the perpetrator.  Mr. Mitchell declared that he was in the carport because he had bought marijuana in the building, saw a woman who looked like she had fainted, so he stood in front of her and asked if she was okay, whereupon she awoke and must have mistakenly thought he was the perpetrator.  Docket No. 8-2 at 67-69.

1 new claims for habeas relief.  Mr. Mitchell alleged that he had recently discovered that Mr. Grim
2 had been disbarred in 2012 and that Mr. Mitchell then had obtained information from the
3 California State Bar about Mr. Grim's disciplinary problems.  Mr. Mitchell's 2015 state habeas
4 petition alleged ineffective assistance of appellate counsel.  The San Francisco County Superior
5 Court denied the habeas petition on November 20, 2015 as untimely, successive and meritless.
6 Docket No. 8-3 at 61-66.

7       On January 25, 2016, Mr. Mitchell filed a habeas petition in the California Court of Appeal
8 raising the same claims as were in his petition in the superior court.  The California Court of
9 Appeal denied the habeas petition on January 28, 2016, as untimely and for failure to state a prima
10 facie case for relief.  Docket no. 8-3 at 42, 69.

11       On March 28, 2016, Mr. Mitchell filed a habeas petition in the California Supreme Court,
12 asserting the same ineffective assistance of counsel claims.  Mr. Mitchell added a challenge to the
13 sufficiency of the evidence to support the verdict.  On May 18, 2016, the California Supreme
14 Court summarily denied the petition.  Docket No. 6-1 at 27; Docket No. 8-3 at 71.

15 B.     <u>The Federal Habeas Petition</u>

16       Mr. Mitchell's federal petition for writ of habeas corpus was stamped "filed" on July 11,
17 2016.  The petition has a proof of service showing it was mailed to the Court from someone in
18 Fresno, rather than from the prison in which Mr. Mitchell was located.  Docket No. 1 at 20.
19 Because the petition was mailed to the Court from someone outside the prison, Mr. Mitchell does
20 not receive the benefit of the prisoner mailbox rule.  *See Stillman v. Lamarque*, 319 F.3d 1199,
21 1201 (9th Cir. 2003) (to benefit from the mailbox rule, a prisoner must be proceeding without
22 assistance of counsel and must deliver his filing to prison authorities for forwarding to the court).
23 The petition is deemed filed on July 11, 2016, the actual date it was stamped "filed" at the Court.

24       Mr. Mitchell asserts the following claims in his federal habeas petition:  First, Mr. Mitchell
25 claims that he received ineffective assistance of appellate counsel in that Mr. Grim failed to argue
26 on appeal that the denial of a pretrial lineup for the victim to identify the perpetrator caused a due
27 process violation.  Docket No. 1 at 10.  Mr. Mitchell argues that the "newly discovered evidence"
28 of Mr. Grim's disbarment shows that Mr. Grim did not raise the issue because he "was embroiled

3

1  at the time in numerous controversies relating to professional misconduct and intentional
2  malfeasance that ultimately resulted in his being disbarred." *Id.*  Second, Mr. Mitchell claims he
3  received ineffective assistance of appellate counsel in that Mr. Grim "abandoned petitioner's cause
4  without notice or the filing of a petition for review in the California Supreme Court." *Id.*  Third,
5  Mr. Mitchell claims that his right to due process was violated because the evidence was
6  insufficient to support the verdict; specifically, "no evidence exist[ed] establishing petitioner as
7  the perpetrator of the offense(s) as charged." Docket No. 1 at 16; *but see* footnote 1, *supra.*  Mr.
8  Mitchell also urges that the state court applied an incorrect standard of review in adjudicating his
9  ineffective-assistance-of-counsel claim, but that is not a separate claim for relief and instead is an
10 argument as to why this court should not defer to the state court's adjudication of his claim.  *See*
11 *generally Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) ("a petition alleging errors in the
12 state post-conviction review process is not addressable through habeas corpus proceedings");
13 *Application of Gordon*, 157 F.2d 659, 660 (9th Cir. 1946) (allegation that state court decided
14 appeal improperly not enough to state claim in federal habeas).

C.  Facts About Appellate Attorney LeRue Grim

1.  Disciplinary Problems

Attorney LeRue Grim had several disciplinary proceedings in the California State Bar Court, according to the Decision and Order of Involuntary Inactive Enrollment filed February 16, 2012 in *In the Matter of LeRue J. Grim*, State Bar Court No. 09-O-17571-LMA (10-O-01017) ("*Grim* order").[2]  None of the disciplinary proceedings were based on Mr. Grim's representation of Mr. Mitchell.

In 1983, Mr. Grim received a private reproval for failing to perform legal services competently in two client matters.  *See id.* at 11.

On or about December 30, 1997, Mr. Grim was "placed on probation for two years on conditions, including four months' actual suspension" for his misconduct in four client matters.

---

[2] The *Grim* order and information about Mr. Grim's eligibility to practice law in California are available by searching his name on the California State Bar's website, http://members.calbar.ca.gov/fal/MemberSearch/QuickSearch (last visited February 6, 2017).

4

*Id.* at 11.

On or about July 1, 1997, Mr. Grim was "placed on probation for three years on conditions, including 30 months' actual suspension and until he had shown proof of rehabilitation," for his misconduct in two other client matters. *Id.*at 12.

Mr. Grim was once again eligible to practice law as of April 14, 2000. The California State Bar's "Status History" for Mr. Grim shows that his status was changed to "not eligible to practice law in CA" as of July 31, 1997, and changed to "Active" as of April 14, 2000.

Mr. Grim provided legal services for Mr. Mitchell from about November 2004 through February 2006.

Mr. Grim was disbarred in 2012. The attorney misconduct that led to the disbarment occurred in two client matters, i.e., the *Hackney* matter and the *Gin* matter. *Grim* order at 2-11. In the *Hackney* matter, Mr. Grim was hired in February 2007 to represent Mr. Hackney in a criminal appeal. After Mr. Hackney paid fees and met with Mr. Grim once, Mr. Grim failed to perform legal services, failed to respond to client inquiries, and failed to return client papers and fees over the next couple of years. *See id.* at 8-11. In the *Gin* matter, Mr. Grim filed a civil complaint on behalf of his client in June 2007, and thereafter failed to file a proof of service to show that the complaint had been served on defendants, although the proof of service was due by August 7, 2007. *See id.* at 2. Mr. Grim failed to prosecute the *Gin* matter for two years, and ignored repeated orders of the superior court regarding the proof of service, sanctions and orders to show cause. *Id.* at 3-7. The misconduct described in the *Hackney* matter occurred no earlier than February 2007 and continued until about September 2011; the misconduct described in the *Gin* matter occurred no earlier than June 2007 and continued until about May 2010.

The California State Bar Court's February 16, 2012 decision ordered Mr. Grim into "involuntary inactive" status and recommended that he be disbarred. *Id.* 16-17. Mr. Grim was disbarred on August 17, 2012, according to the information available on the California State Bar website.

Mr. Mitchell states that he did not learn of Mr. Grim's disciplinary troubles until 2015.

5

2. Mr. Grim's Representation Of Mr. Mitchell

Mr. Grim represented Mr. Mitchell from about November 2004 through early 2006. Other than stating that Mr. Grim "was retained for the purposes of prosecuting petitioner's appeal," Mr. Mitchell provides no information about the scope of Mr. Grim's representation. Docket No. 1 at 8. Mr. Mitchell does not submit a copy of any retainer agreement, any letters between them or even a declaration describing an oral agreement.

Mr. Grim filed the Appellant's Opening Brief and Petition for Writ of Habeas Corpus in the California Court of Appeal in May 2005. After the conviction was affirmed on January 24, 2006, Mr. Grim filed a "petition for review" -- apparently a mislabeled petition for rehearing, as the petition asked the court to reconsider its earlier opinion, Docket No. 8-1 at 95 -- in the California Court of Appeal on February 8, 2006. Mr. Grim sent to Mr. Mitchell a copy of that petition, which referred to the California Court of Appeal's affirmance of Mr. Mitchell's conviction. *See* Docket No. 8-1 at 89, 97. The California Court of Appeal denied the petition for review on February 17, 2006. If a petition for review was going to be filed in the California Supreme Court, it had to be filed within 40 days thereafter, by March 29, 2006. *See former* Cal. Rules of Court 24(b) and 28(e) (later amended effective Jan. 1, 2007 and renumbered as Rules 8.366(b) and 8.500(e)). There is no evidence that Mr. Grim tried to file a petition for review in the California Supreme Court or took any other steps on Mr. Mitchell's behalf after February 17, 2006. As noted earlier, a different attorney was appointed to represent Mr. Mitchell in the 2006 state court habeas proceedings after the order to show cause was issued on January 24, 2006.

Mr. Mitchell presents no evidence of any communications between him and Mr. Grim, or any attempt by him to communicate with Mr. Grim, after his conviction was affirmed. Nor does Mr. Mitchell present any evidence that he complained to the California State Bar or any state court about Mr. Grim. Indeed, there is a complete absence of any evidence that Mr. Mitchell did anything regarding his case from late 2006 through early 2015.

### III. DISCUSSION

A. The Limitations Period Started When The Judgment Became Final

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a statute

6

1  of limitations on petitions for writ of habeas corpus filed by state prisoners. Petitions filed by
2  prisoners challenging noncapital state convictions or sentences must be filed within one year of the
3  latest of the date on which: (1) the judgment became final after the conclusion of direct review or
4  the time has passed for seeking direct review; (2) an impediment to filing an application created by
5  unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the
6  constitutional right asserted was recognized by the Supreme Court, if the right was newly
7  recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the
8  factual predicate of the claim could have been discovered through the exercise of due diligence.
9  28 U.S.C. § 2244(d)(1).

10  The limitations period in this case began when the judgment became final upon "the
11  expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). Where, as here, a
12  petitioner could have sought review in the state supreme court, but did not, the limitations period
13  begins on the day after the date on which the time to seek such review expired. *Gonzalez v.*
14  *Thaler*, 565 U.S. 134, 150 (2012). The deadline for filing a petition for review in the California
15  Supreme Court was 40 days after the California Court of Appeal's decision was issued. *See*
16  *former* Cal. Rules of Court 24(b) and 28(e) (amended effective Jan. 1, 2007, and renumbered as
17  Rules 8.366(b) and 8.500(e)). Therefore, Mr. Mitchell's deadline to file a petition for review in
18  the California Supreme Court following the denial of his appellate court "petition for review" was
19  March 29, 2006, and his federal habeas limitations period would have started the next day, on
20  March 30, 2006. On that date, the state habeas proceedings were pending so the limitations period
21  paused as soon as it began.[3]

22  The facts of this case do not support a delayed start for the limitations period based on Mr.
23  Mitchell's 2015 discovery of Mr. Grim's disbarment. Under § 2244(d)(1)(D), the one-year
24  limitations period does not start until "the date on which the factual predicate of the claim or
25  claims presented could have been discovered through the exercise of due diligence." The factual

---

[3] If no state habeas petition had been filed in 2006, Mr. Mitchell's limitations period would have started on March 30, 2006, and would have expired on March 30, 2007. However, as explained below, because the state habeas petition in March 2006 and wasn't denied until September 2006, the limitations period started on September 18, 2006 and expired on September 18, 2007.

7

1  predicate of a claim is based on a habeas petitioner's knowledge of the facts supporting the claim,
2  and not the evidentiary support for the claim. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.
3  1998). The time begins "'when the prisoner knows (or through diligence could discover) the
4  important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254
5  F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)).
6  This subsection does not apply here because Mr. Grim's disbarment and disciplinary problems
7  based on his conduct in other cases do not provide the factual predicate for any of Mr. Mitchell's
8  claims. Mr. Mitchell's claims are that Mr. Grim failed to include two issues in the appellate brief,
9  but Mr. Mitchell would have known or could have discovered that the issues were omitted merely
10 by reading the briefs that were sent to him in 2006. Mr. Mitchell also is not entitled to a delayed
11 start for his claim that Mr. Grim abandoned him (by failing to file a petition for review and failing
12 to inform him of the results of the petition for rehearing in the California Court of Appeal)
13 because, as discussed more in the equitable tolling section later in this order, Mr. Mitchell has not
14 provided any evidence that Mr. Grim did in fact abandon him, let alone explain why it would have
15 taken him until 2015 to discover that he had been abandoned. Mr. Mitchell had no reason to
16 believe in 2006 that a petition for review had been filed on his behalf in the California Supreme
17 Court.
18     Learning of Mr. Grim's disciplinary problems may have enabled Mr. Mitchell to come up
19 with a theory as to why Mr. Grim provided ineffective assistance, but that is not the factual
20 predicate of the ineffective-assistance claim. The omissions of issues in the appellate brief by Mr.
21 Grim were already evident irrespective of why Mr. Grim provided ineffective assistance.
22 Deficient performance is deficient performance, regardless of whether counsel's misstep results
23 from, e.g., an understandable personal emergency or plain old ineptitude. Moreover, it is
24 noteworthy that, in any event, the theory Mr. Mitchell has developed does not even fit the
25 chronology of Mr. Grim's disciplinary problems: Mr. Mitchell argues that Mr. Grim provided
26 ineffective assistance because he "was embroiled at the time in numerous controversies relating to
27 processional misconduct," Docket No. 1 at 10, but Mr. Grim's disciplinary problems occurred
28 years before and years after – rather than during – his representation of Mr. Mitchell.

Accordingly, Mr. Mitchell's discovery in 2015 of Mr. Grim's disciplinary problems does not support a delayed start of the limitations period for any of Mr. Mitchell's claims. Thus, the usual starting date – the date on which the judgment became final upon conclusion of direct review (*i.e.*, on March 30, 2006) that could apply absent tolling – is the proper starting date for the limitations period here.

B.  Statutory Tolling Applies Only For The 2006 State Habeas Proceedings

The one-year limitations period can be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). State habeas petitions (or other collateral challenges) filed after the limitations period has expired have no tolling effect, however. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[§] 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed).

Here, when Mr. Mitchell's conviction became final by conclusion of direct review in March 2006, state habeas proceedings were ongoing and tolled the limitations period. The San Francisco County Superior Court denied Mr. Mitchell's habeas petition on September 18, 2006. Mr. Mitchell did not further pursue state habeas relief in the state's higher courts at that time. Mr. Mitchell did not take any action until 2015. Mr. Mitchell's one-year limitations period was tolled until the rejection of his state habeas petition on September 18, 2006, because the denial of the petition was final the day the decision was filed. *Cf. In re Clark*, 5 Cal. 4th 750, 767 n.7 (Cal. 1993) (no appeal lies from the denial of a petition for writ of habeas corpus in superior court). Therefore, Mr. Mitchell had 365 days in his limitations period remaining when the state habeas petition was denied and the statutory tolling under § 2244(d)(2) ended. The presumptive deadline for him to file his federal habeas petition was September 18, 2007.

Mr. Mitchell also filed state habeas petitions in 2015 and 2016, but those petitions were filed too late to support statutory tolling. The limitations period had expired in 2007, so the state habeas petitions filed eight-plus years later in 2015 and 2016 did not have any tolling effect. *See Ferguson*, 321 F.3d at 823.

9

C.   No Equitable Tolling Applies

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

Mere negligence by an attorney does not amount to an extraordinary circumstance warranting equitable tolling of the limitations period. *See Holland*, 560 U.S. at 652 ("a 'garden variety claim' of attorney negligence" does not warrant equitable tolling of habeas statute of limitations period). This is because a petitioner ordinarily is "bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent." *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012) (citing *Maples v. Thomas*, 565 U.S. 266 (2012) (using agency principles)). Thus, for example, an attorney's miscalculation of deadlines relating to the filing of a habeas petition is considered negligence that is not an "extraordinary circumstance" warranting equitable tolling. *See Randle v. Crawford*, 604 F.3d 1047, 1057–58 (9th Cir. 2010) (trial counsel's failure to perfect a timely appeal, post-conviction counsel's incorrect advice as to filing deadline for federal petition and two-month delay in providing client files did not warrant equitable tolling). When, however, counsel's errors are greater than or different from a simple miscalculation of the deadline, extraordinary circumstances may be found.

Counsel's professional misconduct, including attorney abandonment, can "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651; *see id.* at 635-43 (attorney failed to file a timely application despite petitioner's repeated requests to do so, failed to inform petitioner about crucial facts related to the case, and stopped communicating with petitioner over a period of several years); *cf. Maples*, 565 U.S. 266 (attorney abandonment can be "cause" that will excuse procedural default); *id.* at 274-78, 289 (procedural default excused because petitioner's two lawyers left the big firm at which they

1    were employed and took employment positions that disabled them from representing the
2    petitioner, failed to tell the petitioner of that change of employment, failed to inform the court, and
3    failed to get a new attorney for the petitioner—the combined effect of which was to leave the
4    petitioner unaware that he had no attorney representing him).

5          Mr. Mitchell has failed to show that Mr. Grim abandoned him in the course of his direct
6    appeal.[4]  The burden to establish equitable tolling rests on the petitioner, *see Holland*, 560 U.S. at
7    655, and Mr. Mitchell falls far short of carrying that burden.  First, Mr. Mitchell has provided no
8    information about the scope of the representation Mr. Grim agreed to provide, other than the bare
9    allegation that Mr. Grim "was retained for the purposes of prosecuting petitioner's appeal."
10   Docket No. 1 at 8.  On this evidence, it is not clear that Mr. Grim agreed to file a petition for
11   review in the California Supreme Court.  Review by the California Supreme Court is discretionary
12   rather than mandatory, and there are criteria for when discretionary review is proper.  *See* Cal.
13   Rule of Court 8.500(b).  Mr. Mitchell has not shown that his case was one where review should
14   have been sought by appellate counsel, let alone that Mr. Grim agreed to file a petition for review.
15   Further, attorney abandonment is not simply a missed deadline or an unfiled brief, but also usually
16   entails an attorney failing to respond to his client's repeated inquiries – facts that are not asserted
17   here.  *Cf. Rudin v. Myles*, 781 F.3d 1043, 1056–59 (9th Cir. 2015) (attorney abandonment found
18   where post-conviction appointed attorney showed up for hearings but eventually stopped
19   communicating with his client and never filed the state post-conviction petition in the 500+ days
20   before he was substituted out of the case); *Gibbs v. LeGrand*, 767 F.3d 879, 886–88 (9th Cir.
21   2014) (equitable tolling warranted where the attorney failed to inform the client that the state's
22   highest court had denied the appeal of his state post-conviction petition, despite the client's
23   repeated inquiries about the status of his case); *Doe v. Busby*, 661 F.3d 1001, 1012–15 (9th Cir.
24   2011)(extraordinary circumstances existed where the attorney who had been hired more than a
25   year before the deadline failed to file a federal petition for four years although client repeatedly
26   pleaded with him to file that petition, threatened to quit if client did not drop State Bar complaint,

---

[4] Mr. Mitchell does not allege that Hickman abandoned him by failing to file a habeas petition in the California Court of Appeal or California Supreme Court.

11

1 then quit without having filed a petition and took months to return client files). Mr. Grim

2 informed Mr. Mitchell of the results of the direct appeal and of his filing the "petition for review"

3 with the Court of Appeal. There are no facts suggesting Mr. Grim failed to respond to *e.g.*,

4 repeated inquiries. Moreover, if Mr. Mitchell thought he had been abandoned, one would expect

5 him to at least ask his attorney what was happening in his case. Yet, there is no evidence that Mr.

6 Mitchell tried to do so, nor is there any evidence that Mr. Grim falsely assured Mr. Mitchell that

7 his appeal was ongoing in 2007 and later years.

8 Mr. Mitchell also is not entitled to equitable tolling based on Mr. Grim's disciplinary

9 problems because he has not shown a connection between Mr. Grim's disciplinary problems and

10 Mr. Mitchell's delay in filing a federal habeas petition. Where a prisoner fails to show "any causal

11 connection" between the grounds upon which he asserts a right to equitable tolling and his

12 inability to timely file a federal habeas application, the equitable tolling argument will be rejected.

13 *See Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *modified on other grounds by* 447

14 F.3d 1165 (9th Cir. 2006) (where prisoner failed to show causal connection between self-

15 representation on direct appeal or physical and mental disabilities and inability to timely file

16 petition, district court could properly find that he was not entitled to equitable tolling where he

17 earlier had filed a state habeas petition). Mr. Grim was not disciplined for his performance in Mr.

18 Mitchell's case, and was not disciplined for conduct contemporaneous with his representation of

19 Mr. Mitchell. Equitable tolling is not warranted because Mr. Mitchell has failed to show a causal

20 connection between Mr. Grim's disciplinary problems and Mr. Mitchell's extreme delay of more

21 than eight years in filing his federal habeas petition.

22 Neither the unsupported assertion that Mr. Mitchell was abandoned nor the fact that the

23 appellate attorney was disciplined for conduct unrelated to his representation of Mr. Mitchell

24 shows an "extraordinary circumstance" supporting equitable tolling. But even if Mr. Mitchell

25 could satisfy that prong of the equitable tolling test, he utterly fails on the diligence prong of the

26 equitable tolling test.

27 Mr. Mitchell has failed to carry his burden to show that he was "pursuing his rights

28 diligently," as is required for equitable tolling. *Holland*, 560 U.S. at 649. The diligence required

is "reasonable diligence," not maximum feasible diligence." *Id.* at 653. "Reasonable diligence requires only 'the effort that a reasonable person might be expected to deliver under his or her particular circumstances.'" *Fue v. Biter*, 842 F.3d 650 (9th Cir. 2016) (citation omitted) (petitioner who waited 14 months to inquire of California Supreme Court whether his habeas petition had been decided acted with reasonable diligence, given the absence of time limits for that court to rule on habeas petitions). Here, the inaction was not for a matter of months, as Mr. Mitchell does not identify even a single step he took to pursue collateral relief for more than eight years following the denial of his first habeas petition in September 2006. As of 2006, Mr. Mitchell knew (or could have known by reading the briefs that Mr. Grim had sent to him) that Mr. Grim had not presented the issues on appeal (i.e., that there was a problem with the identification procedures and there was insufficient evidence to support the conviction). Mr. Mitchell also fails to identify even a single step he took for more than eight years after his state habeas petition was denied in September 2006 to contact Mr. Grim, to complain about Mr. Grim's performance, or to try to present the claims to any state or federal court until he filed a state habeas petition in July 2015. Mr. Mitchell did not act with "reasonable diligence," *Holland*, 560 U.S. at 653, required for equitable tolling.

Mr. Mitchell has not shown either that an extraordinary circumstance stood in the way of him timely filing his federal petition or that he was diligently pursuing his rights, both of which are necessary for equitable tolling. He therefore is not entitled to any equitable tolling of the limitations period.

D. <u>Mr. Mitchell Does Not Show Actual Innocence To Excuse The Petition's Untimeliness</u>

A federal court may hear the merits of an untimely petition if the failure to hear the claims would constitute a miscarriage of justice. The Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32. The actual innocence gateway established in

13

*Schlup* is available to a petitioner whose petition is otherwise barred by the statute of limitations in § 2244(d). *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id.* at 321.

Mr. Mitchell alleges that his petition can be considered under the actual innocence gateway, and cites *McQuiggin*. Docket No. 1 at 10. He makes no further argument and presents no evidence in support of his conclusory allegation of actual innocence. Mr. Mitchell does not pass through the actual innocence gateway to have his untimely petition reviewed on the merits.

To summarize the untimeliness analysis: Mr. Mitchell's federal petition for writ of habeas corpus filed on July 11, 2016, was filed more than eight years after the expiration of the federal habeas statute of limitations period in September 2007. He has not shown that he passes through the actual innocence gateway to allow this court to consider his untimely petition. The petition must be dismissed as untimely.

E.     No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

///
///
///
///
///
///

14

## IV. CONCLUSION

Respondent's motion to dismiss is **GRANTED**.  Docket No. 6.  This action is dismissed because the petition for writ of habeas corpus was not filed before the expiration of the habeas statute of limitations period.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: February 24, 2017

_____
EDWARD M. CHEN
United States District Judge